ODOM, Justice.
 

 Plaintiff holds a teacher’s certificate, which shows that she is qualified to teach the grammar grades in the public schools of Union Parish. She was employed by the Union Parish School Board to teach, and did teach, in that parish during the regular session of 1932-33. At the end of that session she was granted a leave of absence for one year. She returned and taught under contract for three consecutive years — 1934—35, 1935-36 and 1936-37. It seems to be conceded that she is a competent, loyal and faithful teacher. There was never a complaint made against her. After the schools closed about May 20, 1937, she asked the Superintendent of Schools to give her work in some public school of the parish for the 1937-38 session. He refused to give her work, without assigning any reason except that she had been discharged. Her attorney wrote the School Board that she desired an assignment and was ready and willing to teach, as she had done in pri- or years. The Board refused to give her employment, and she brought this suit, the purpose of which was to compel the School Board to recognize her as a regular, permanent teacher in the employ of the Board, under Act No. 58 of 1936, commonly referred to as the “Teacher Tenure Law”, and to compel the Board to pay her. the same salary it had paid her during the previous session.
 

 The School Board set up several defenses. The first was that plaintiff was
 
 *93
 
 never regularly employed as a teacher. This defense has been abandoned.
 

 The second defense, which was made in the alternative, was that, in case the court should hold that plaintiff was regularly employed, she cannot recover because she was discharged by resolution of the School Board, adopted May 21, 1937, and that she was given timely notice of her discharge by the Parish Superintendent of Schools on May 22, 1937. This defense is urged here.
 

 The third defense, which was also made in the alternative, was that plaintiff was guilty of laches; that her failure to make demand for reinstatement after her discharge, her failure to demand that she be given employment, her failure to demand a hearing after she was discharged, lulled the defendant Board into the belief that she had acquiesced in the actions of the Board, which are relied upon by the Board as a basis for its contention that she had been discharged; that because of her dilatory tactics the Board had employed another teacher to take her place and had paid
 
 her
 
 two months’ salary before this suit was filed, on November 2, 1937. The defendant pleads estoppel. This defense also is urged here.
 

 The fourth defense set up by the School Board was that Act No. 58 of 1936, the Teacher Tenure Law, which is relied on by the plaintiff, is unconstitutional. This defense has been abandoned.
 

 There was judgment in the district court in favor of plaintiff and against the School Board, recognizing plaintiff as a regular and permanent teacher in the employ- of the School Board of Union Parish and, as such, entitled to be paid a salary of $80.75 per month for the 1937-38 session, this being the salary which was paid plaintiff under her previous contract and assignment.
 

 The School Board appealed to the Court of Appeal, Second Circuit. That court affirmed the judgment, and the Board applied to this court for writs, which were granted, and the case is now before us for review.
 

 There are only two points before us for decision. The first and principal one is whether plaintiff was lawfully discharged, and the second is whether, if she were not, she was guilty of such laches as bars recovery.
 

 We concur in the ruling made by both the trial judge and the Court of Appeal that plaintiff was not lawfully discharged by the School Board. She was employed to teach by the Board and did teach in one of the public schools of Union Parish for three consecutive years, her three-year tenure ending on May 20, 1937. The School Board met in special session on the following day, May 21. We quote the following extract from the minutes of that meeting:
 

 “On re-convening in special session and considering the Teacher Tenure Law as related to the teaching personnel of Union Parish, it was brought out that teacher employment prior to noon, July 28, 1936, were not employed under Tenure Law and were not under tenure service at present,
 
 *95
 
 and that teachers employed after noon, July 28, 1936, were employed under the Tenure Law and were now under tenure service. In order to clarify to the teaching personnel of the Parish, their present status and relationship under the tenure law, the following letter was authorized to he issued to each white' and colored teacher presently -employed in the school system of Union Parish for the school session of 1936-37.”
 

 This shows that the School Board’s interpretation of Act No. 58 of 1936, the Teacher Tenure Law, was that only those teachers who had been employed since the law went into effect (on July 28, 1936) were affected by the provisions of that act. The minutes state that “it was brought out that-teacher employment prior to noon, July 28, 1936, were not employed under Tenure Law and were not under tenure service at present, and that teachers employed after noon, July 28, 1936, were employed under the Tenure Law and were now under tenure service”.
 

 The minutes further recite that the Board’s purpose was “to clarify to the teaching personnel of the Parish, their present status and relationship under the tenure law”.
 

 This cannot be interpreted to mean that the School Board intended to discharge any of its teachers, but merely “to clarify” their status under the tenure law, or, as we understand it, to make it clear to them that their tenure under the law began, not from the date on which they were originally employed, but on the date of their reemployment after the law went into effect.
 

 But, on the following day, May 22, the Parish Superintendent of Schools wrote and mailed to each and every teacher of the parish a letter reading as follows:
 

 “Farmerville, Louisiana
 

 “May 22, 1937.
 

 “To the Teachers of Union Parish:
 

 “Dear Teacher:
 

 “According to the rulings of State Superintendent T. H. Harris and the Attorney General, teachers whose employment was authorized prior to noon on July 28, 1936, are not under the tenure law.
 

 “At a special session of the Union Parish School Board held on May 21, 1937, I was instructed to advise you that your services in the employment of this Board will terminate at the end of your present contract. This does not necessarily mean that you will not be re-employed, but will clarify in your mind any mis-interpretation of your status as a teacher in the Parish.
 

 “Yours very truly,
 

 “Union Parish School Board
 

 “[Signed] By P. L. Read
 

 “Parish Superintendent.
 

 “P. S. — Please fill out the enclosed questionnaire and return to the office of the Union Parish School Board at once.
 

 “P. L. Read.”
 

 Plaintiff received a copy of this letter through the mail. The School Board relies solely upon the above quoted minutes of the Board and the said letter as a ba
 
 *97
 
 sis for its principal contention that plaintiff was lawfully discharged.
 

 We find no merit in this contention. It is certain that, if by these proceedings plaintiff was discharged, each and every teacher in the parish was discharged also. The letter was not addressed to the plaintiff personally. It was a general or blanket letter, addressed to all the teachers. If one was discharged, all were discharged — the slate was cleaned.
 

 To hold that plaintiff and all the other teachers of Union Parish were discharged by this procedure would violate both the letter and the spirit of the Teacher Tenure Act. Under that act all public school teachers are classified either as probationary or as permanent teachers. The act specifically provides, and counsel for the School Board admit, that neither probationary nor permanent teachers can be discharged by the Board without cause. If, as we have stated, plaintiff was discharged, then each and every teacher of the parish was discharged. Certainly the School Board did not intend that the so-called resolution which it adopted should have the effect of discharging the teachers. The argument that it did have that effect is an admission that the Board violated the letter of the law.
 

 The second paragraph of section 1 of Act No. 58 of 1936 provides that:
 

 “Each teacher shall serve a probationary term of three years, such probationary term to be reckoned from the date of his first appointment in that parish in which the teacher is serving his probation. During said probationary term the parish school board may dismiss or discharge any probationary teacher upon the written recommendation, accompanied by the valid reasons therefor, of the superintendent of schools of that parish.”
 

 Counsel for the School Board say in their brief at Page 7 that “the Legislature fixed a probationary term or apprenticeship period for teachers at three years, and said teachers during said apprenticeship could not be discharged except for cause”. That is unquestionably true. But this is inconsistent with the Board’s principal defense to this suit, which was that the proceeding on May 21 and the Superintendent’s letter of May 22 had the effect of discharging plaintiff and every other teacher in the parish, whether plaintiff and the other teachers were serving the probationary • period or whether they were permanent teachers under the act.
 

 The fourth clause of section 1 of the act provides that:.
 

 “No permanent teacher shall be removed from office except upon written and signed charges of wilful neglect of duty, or of incompetency, or dishonesty, and then only if found guilty after a hearing by the school board of that parish in which the teacher is employed.”
 

 It would be unreasonable to hold that the Parish School Board intended to violate so flagrantly the plain letter of the statute under which it, apparently was attempting to proceed. The members of the School Board and the Parish Superintendent must have known what is now admitted by coun
 
 *99
 
 sel, that neither probationary nor permanent teachers could be discharged without cause.
 

 We doubt that the School Board intended to discharge plaintiff or any of its other teachers. And we concur in the view expressed by both the trial judge and the Court of Appeal that, if the School Board did intend to discharge plaintiff, its purpose failed.
 

 It follows that plaintiff, having taught for three consecutive years, automatically became a permanent teacher of the parish at the end of the 1936-37 term, because the act specifically states that “in the absence of such notification” — i. e., notification that he has been discharged —“such probationary teacher shall automatically become a regular and permanent teacher in the employ of the school board of that parish in which he has successfully served said three year probationary term”.
 

 Plaintiff, not having been lawfully discharged, was entitled to an assignment in the public schools of the parish for the 1937-38 session and was entitled to be paid the same salary which she had received under her last contract, which was entered into with the Board in September, 1936.
 

 Plaintiff was not guilty of such laches as would bar recovery. She applied to the Superintendent for an assignment, which he refused. It is argued that she should have applied to the School Board for reinstatement. There was no need of her doing so because she had not been discharged. It is also argued that she should have applied to the School Board for an assignment. But there is no record that the School Board held any meeting between May and September. It is in evidence that plaintiff’s attorney wrote the School Board, requesting that she be given an assignment. Nothing was done by the Board. The 1937-38 school session began on September 16. Plaintiff filed her suit on November 2, following. There is no merit in the argument that she was guilty of undue delay in bringing her suit.
 

 In this connection, it is pertinent to say that it is in evidence that the School Board of Union Parish had, by resolution adopted in regular session, virtually turned over to the Parish Superintendent the entire control and management of the public schools of that parish. He was authorized to employ teachers and to do all acts necessary and incidental to the conduct of the public school system of the parish. Plaintiff knew this, and it was therefore natural for her to present her request to the Superintendent.
 

 In support of the plea of laches, the School Board relies upon the rulings made in the recent cases of State ex rel. Mrs. Anna Calamari v. Orleans Parish School Board, 189 La. 488, 179 So. 830, and State ex rel. Mrs. Evelyn McMurray v. Orleans Parish School Board, 189 La. 502, 179 So. 834. These cases do not support the School Board’s defense in the case at bar, as will be seen by a brief review of
 
 *101
 
 the pertinent facts in the Calamari and the McMurray Cases.
 

 In the Calamari Case, the plaintiff, a teacher, sent a written resignation to the Orleans Parish School Board after her marriage in the summer of 1936, in accordance with a regulation of the Orleans Parish School Board that the marriage of a female teacher automatically constituted her resignation, no married teachers being employed in the public schools of that parish. Her resignation was formally accepted by the Board. She was informed on September 25, 1936, that she would not be reinstated in her position, but she did not file suit against the School Board until September 21, 1937, more than a year later. The lower court found for the defendant, and this judgment was affirmed by this court, it being held that, regardless of any question of the validity of the above mentioned regulation of the Orleans Parish School Board, plaintiff had waited an unreasonable time before filing her suit, and that the reasons she had advanced to explain her delay were not good.
 

 In the McMurray Case the situation was similar, plaintiff resigning for the same reason in June, 1936, and not filing suit until October 6, 1937. The case was jointly argued and submitted with the Calamari Case, and this court said [page 837]:
 

 “The cases are similar, and the reasoning and the authorities therein cited are pertinent here.”
 

 For the reasons assigned, the judgment of the Court of Appeal under review is affirmed.