ELLIS, Judge.
Relator had been employed and as a result thereof enjoyed tenure as a principal in the school system of Calcasieu Parish up until 1950'when certain charges of misconduct were filed against him and! a hearing partially completed was discontinued and as a result of negotiations between relator, his attorney and the School Board an agreement was reached by which the charges were dropped and a new contract between relator and the School Board agreed upon.
There are certain provisions of the agreement between relator and the School Board which are not in dispute and admitted by both. It is agreed that the charges were dropped and the hearing discontinued and relator resigned as principal and accépted a position as a regular teacher and was to be given a contract, which was done, for three years for a consideration of $5,000 per year, which was the same salary he had been drawing as principal and which was above the salary of a regular teacher. At the expiration of the three year period covered by the contract given pursuant to the agreement, relator was offered a contract at the regular teacher pay (1953-1954 term) which amounted to $3,600 per year plus certain cost of living increases which had been granted by the State and the School Board since the 1950 contract. Relator signed this contract under protest and brought the present suit to compel the School Board to pay him for the school year 1953-1954 the salary of $5,000 per year plus certain cost of living increases that had been granted by the State.
Relator contended that the attempted reduction of his salary at the expiration of the three year period without written charges having been preferred against him and a hearing had thereon constituted a removal *699 from office within the meaning of the Teacher Tenure Act, LSA-R.S. 17:441, 17:443. Further, that the School Board was prohibited by the Statute to have a salary reduced without a hearing of written charges against him.
The School Board maintained that the agreement which ended the charges and hearing and which resulted in a new contract between relator and the School Board contained an additional provision other than those admitted by both parties by which relator, should he continue teaching after the three year period for which he was to be paid $5,000 per year, would receive the same salary as every other regular teacher of like experience and status.
In the Lower Court the School Board offered that portion of the proceedings pertaining to the agreement as transcribed by the official stenographer at the hearing, to which counsel for relator objected on the ground that it “might tend to vary the terms and conditions of the written contract, settlement or compromise that was executed by the parties involved at the hearing.”
The District Judge allowed the introduction with a reservation of ruling and it is as follows:
“Q. I hand you a booklet here marked:
“Volume VI — Hearing before Cal-casieu Parish School Board at the Administration Building, 1624 Kirk-man Street, Lake Charles, Louisiana, beginning May 25, 1950. In re— Charges brought against E. D. Parrish.
“I ask you if this was the sixth volume or last volume of that testi- . mony or other evidence and proceedings taken? A. Yes, sir, that is.
“Q. That is the Volume VI? A. Yes.
“Q. Now, Mr. Norton, I am going to hand you this volume and ask that you turn to Page 2030 and read page 2030 and through the second paragraph of Page 2031, to the Court. Read it aloud to the Court.”

******

“Exhibit D-2:
“(Reconvened at 5:35 P.M. June 26th)
“Mr. Tritico: Gentlemen, I have two documents which I pass on to the school board for your consideration and action.
“Mr. Welsh: (Reads) ‘Calcasieu Parish School Board. Gentlemen: I hereby tender my resignation as principal in the Calcasieu Parish School System to become effective immediately. Also, tender resignation as teacher in the Marion School in order to accept a teaching position elsewhere in Cal-casieu Parish * * * Yours truly, E. D. Parrish.’
“Do I hear a motion to Accept?
“Moved, by Mr. House, seconded by Mr. Pate, that the resignation of Mr. Parrish be accepted. Any discussion?
“(Carried.)
“By Mr. Pate: - Mr. Welsh, I am going to move that Mr. Norton be empowered by resolution to re-employ Mr. Parrish in the parish school system as an employee.
“Mr. Norton: You are authorizing me to employ Mr. Parrish as a teacher at five thousand dollars a year for the next three years; thereafter, if he continues in the service, at the regular salary schedule ?
“Mr. Pate: That’s right.
“(Carried.)
“Mr. Welsh: There is no further business to come before the board. Before we adjourn, I want to say the school board appreciates everything you all have done. You have been very orderly. Maybe once in a while I got a little hard-boiled, but I didn’t mean it. I tried to be as fair as I could, and I think the agreement we have made is *700 for the best,.' for the community at large out there. ■. (
“I hope you folks will get along with the new principal, do the best you can and we want to do the best1 we can. We have done the best we can so far and everybody is satisfied, as far as we qre concerned, with the outcome. We are sorry it all had to come, but these things happen and we just can’t help it.”
Also introduced by the School Board over the objection of counsel with final ruling reserved was a copy, of a letter which reads as follows:
“June 26, 1950
“Mr. E. D. Parrish,
“Lake Charles, La.
“Dear Sir:
“Your resignation as a principal in the Calcasieu Parish School System, dated June 26, 1950, is hereby accepted to become effective immediately.
“Your resignation as a teacher in the Marion school in order to accept a teaching position else where in Cal-casieu Parish is also accepted, and you are hereby assigned to the Cooley and Henry Heights Schools for the session 1950-1951; as soon as an . opening occurs in the Lagrange School, you will be assigned to that school.
“Attached hereto is a contract fixing your salary at $5,000.00' for the years 1950-1951, 1951-1952, 1952-1953. After the expiration of this three year period, your salary will return to the salary of a classroom teacher according to the adopted schedule in force at that time.
“Yours truly,
“H. A. Norton, Superintendent”
The District Court in its written reasons in ruling upon the objection to the introduction of the documents above set forth had the following to say:
“In view of the holding of our Supreme Court in the cases of Succession of Jurisich [224 La. 325], 69 So.2d 361, and Rosenthal v. Gauthier [224 La. 341], 69 So.2d 367, and Article 2276 of the[ LSA-] Civil Code of this State, the Court is of the opinion that the objection to parol testimony to explain or supplement or add to the contract was good, and for purposes of this decision, said evidence is excluded.”
* * * * * *
“A reading of the contract signed by the parties on June 26, 1950, marked p-4 and the minutes of the School Board authorizing the contract shows that the contract is for three years at $5,000.00 per year. There is nothing ambiguous about the contract of June 26, 1950. To admit the letter of June 26, 1950, would be to add to said contract. This is in direct contravention of Article 2276 of the [LSA-] Civil Code.
“Article 3071 of the [LSA-] • Civil Code provides that a compromise is an agreement or contract and must be reduced to writing. This was done in the case at bar.”
As a result of the exclusion of the documents in question the District Court under authority of LSA-R.S. 17:443 and State ex rel. Bass v. Vernon Parish School Board, La.App., 194 So. 74, and Andrews v. Union Parish School Board, 191 La. 90, 184 So. 552 rendered judgment in favor of relator and against the School Board fixing his salary for the 1953-1954 school year at $5,000.
The two cited cases in effect are authority for the proposition that one who had been actively engaged as a teacher in a parish for three or more years could not be changed from principal of a high school and assigned to a grade school at a substantial reduction of salary, without charges of any kind being preferred and without a hearing having been given for under such facts a teacher would be considered as “removed from office” within the prohibition of the Teacher Tenure Act.
It is from this judgment that the school board has appealed and the relator has answered the appeal praying that the judg *701 ment be increased to include an additional grant for the cost of living increases.
This case turns upon the proposition as to what constituted the complete agreement between the parties as the basis of the new contract to be entered into between them.
The written proceedings containing the agreement reached between relator and the School Board, supra, are the best evidence of the contract between relator and the School Board and were admissible. The record is clear that all parties were present when this recommendation was made and the proceedings stand unchallenged by the pleadings or the evidence. Unless and until the written proceedings were attacked by relator they are valid and binding upon him under the circumstances. A mere reading of the proceedings, supra, reveals the agreement reached at that time, viz., the letter of resignation as principal by relator, which was read, and a summary of the authorization of the School Board made by Mr. Norton as to his authorization of employment. This proceedings specifically shows Mr. Norton saying to the Board, “You are authorizing me to employ Mr. Parrish as a teacher at five thousand dollars a year for the next three years; thereafter, if he continues in the service, at the regular salary schedule?" (Emphasis aldd-ed.) To which Mr. Pate, a member of the Board and who had made the motion stated: “That’s right.” The relator and his attorney were both present at that time and there was no objection recorded. As a result of this agreement relator was given a contract for three years at $5,000 per year and it was not necessary that any mention be made in this particular portion of the new contract of employment as to his salary thereafter as the proceedings at the hearing, supra, were and are binding upon him until attacked.
Even if it be conceded for the sake of argument only that the written proceedings did not constitute a contract between relator and the school board, then we have the fact that Mr. Norton wisely attached the three year contract to the letter, a copy of which is quoted above. This letter reiterates the complete agreement reached at the hearing and should it be conceded that the written documents drawn pursuant to and as a result of the agreement reached at the hearing supersede the latter, then under not only the prepondérance of the’ testimony but that which we believe to be absolutely true, the resignation of relator' was read, the contract for $5,000 for three years was drawn, signed and read, and the letter of June 26, 1950 had also been written, signed by the Superintendent, read aloud in the presence of the Board and relator and his attorney, and the three year’ contract was attached thereto. The School Board members,- one after another, testified on the trial of this case, as well as the superintendent, without any hesitation, that relator and his attorney were present and the facts above enumerated were true and correct.
The only testimony offered to contradict that of the School Board members and Superintendent was that of the relator that the letter of June 26, 1950 was not attached' to the three year contract, and that of his attorney who did not remember having seen the letter but he did testify that there was a discussion as to what relator’s salary might be if he remained in the school system of Calcasieu Parish, after three years. The testimony further clearly reveals that the School Board thought and were lead to believe that relator would possibly resign at the end of three years but one member of the school board testified that relator told him he had changed his mind.
Therefore, while we believe that relator was bound by the agreement as shown by the written proceedings, supra, he is most assuredly bound by the terms of the three year contract and the letter of June 26, 1950, to which the three year contract was attached. These documents do not alter or vary the written contract reached in accordance with the proceedings before the School Board, in fact, they coincide and fully corroborate them in every respect.
For the above reasons, the judgment of the District Court is hereby reversed .and relator’s suit dismissed at his cost.
*702 On Motion for Rehearing Rehearing denied.