PAVY, Judge.
Plaintiff was discharged by the Calca-sieu Parish School Board shortly before the end of her three-year probationary period as school bus driver. The discharge was after hearing and upon recommendation of the superintendant. She sued for reinstatement, salaries and bonuses. The district court upheld the school board’s action and she has appealed.
The law applicable to tenure of school bus operators (R.S. 17:491-493) provides that they shall serve a three-year probationary term during which they may be discharged upon the written recommendation of the parish superintendant of schools “.accompanied by valid reasons therefor”.
In Chantlin v. Acadia Parish School Board, 100 So.2d 908 (1st Cir. La.App.1958) the court stated:
“When the Legislature has provided that a probationary school bus driver can be discharged simply for “valid reasons”— in contradistinction to the specified grounds of discharge alone available in the case of tenured bus drivers — this indicates to us a legislative intent to provide a large measure of discretion to school boards in the discharge of such probationary school employees. And although the school board is not authorized to discharge a probationary school employee without any cause at all, State ex rel. Nobles v. Bienville Parish School Board, 200 La. 983, 9 So.2d 310, we think that our brethren of the Second Circuit in Kilpatrick v. Ouachita Parish School Board, La.App., 91 So.2d 453, correctly stated in discussing the standard for discharge of the probationary *894 bus driver, LSA R.S. 17-491, that “By ‘valid reason’ is meant a sound and sufficient reason”, 91 So.2d 455.”

“We think that the discretion given to the school board in discharging for valid reasons school employees during their probationary terms is precisely for the purpose of weeding out personnel whose attitude or performance, while perhaps not so flagrantly faulty as might be required for the discharge of a tenured school teacher, indicate it to be undesirable for reasons of efficiency, morality, or harmony, among others, to grant them permanent status as members of our professional educational force. That is, the grudging performance of the minimum duties required of him does not, in our opinion, prevent a school board from terminating before he attains tenure the services of a probationary employee whose provable acts may indicate him to be a potential source of disharmony and whose attitude indicates that as a permanent employee he will be a drag upon, rather than an assistant in, its mission of educating the children.”
The reason specified by the superinten-dant was that the principals had evaluated her work as being incompetent because of (1) failure to maintain discipline on the school bus and (2) failure to accept and act upon constructive criticism.
Appellant presented several parents of students and a few of the students themselves. The substance of the parents’ tesi-mony was that they considered appellant competent and knew nothing to the contrary. The students related certain incidents in which disciplinary problems were presented on the bus. Generally, their testimony is of only minor significance.
Appellant herself admitted to numerous disciplinary problems but blamed these on the principal’s action in not letting her exercise discipline on the bus, requiring her to report all behavior problems to the principal and in siding with the students and the parents. She further suggested that a segregation effected during the three-year term had contributed to the disciplinary problems and that the black parents were resentful of her because of her nonmem-bership in the NAACP.
These contentions are not borne out by the evidence. Other than appellant’s testimony, there is no evidence of any general resentment against appellant. Many of the parents sided with her in the suit, and none of these testified to the alleged resentment. If anything, the segregation lessened rather than increased the disciplinary problems. Appellant admits her troubles were with the black children and not the white children. Originally appellant had two small busloads of black children on her route. During her three-year term there was a sudden influx of white parents in the area served by her bus route. To adjust for this situation, the school board combined the two previous loads of black children into one load and the white children into another load. It was decided that the children of the newcomer families would have to ride the earlier (less desirable) trip and the other students (mostly black children) who had been riding previously would take the second (more desirable) trip. Appellant claims the black parents resented this and blamed her for it. We find no evidence to that effect and doubt that she would have been blamed for the official action in any event.
Mr. Gabriel Barkate was principal at the high school served by appellant’s bus. He had personally recommended her for the job. Shortly after she started operating the bus, he heard that a rival for the job would try to discredit appellant. Accordingly, he told her to report all behavior incidents to him and started to keep a record of these for appellant’s benefit. He was *895 emphatic that he did not restrict her authority over the students on the bus. The evidence further shows that the principal would seek to resolve the behavior problems with conferences between appellant, the students and parents. On several occasions Barkate temporarily suspended busing privileges of these students.
We do not think it necessary to relate all the incidents recorded in Barkate’s log concerning appellant’s behavior problems. He stated that she had more disciplinary problems than all the other bus drivers combined. Perhaps some of this was due to the fact that she was specially reporting her problems. However, Barkate testified that many of the incidents involving appellant were not recorded in his log, and that he could state that her disciplinary problems were excessive and burdensome to the administration of the school system.
It is particularly noted that the bus driver prior to appellant had no such disciplinary problems. Appellant’s successor had no such problems.
The trial judge wrote a well considered opinion. We think he was correct in his conclusion that:
"Besides the superior authority of a principal, it is necessary to have a bus operator who can maintain discipline when trouble occurs. Although she was otherwise capable, the preponderance of evidence establishes that for some reason or another Mrs. Willis’ ability fell short in this respect. Certainly it was not established that plaintiff’s discharge was arbitrary.”
For reasons assigned, the judgment of the district court is affirmed. All costs of this appeal are to be paid by plaintiff-appellant.
Affirmed.